UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Ray Ruggley,                                                    Case No. 3:23-cv-01402

        Plaintiff,

  v.                                                                       MEMORANDUM OPINION
                                                                                            AND ORDER

Menard Inc., et al.,

        Defendants.
_____

Menard Inc.,

        Third Party Plaintiff /
        Counterclaim Defendant,

  v.

The Allstate Corporation,

        Third Party Defendant /
        Counterclaim Plaintiff.


#### I. INTRODUCTION

This case involves an insurance coverage dispute between Allstate Property and Casualty Insurance Company ("Allstate") and Menard, Inc. ("Menard"), which operates a chain of retail hardware stores under the name Menards ("Mendards"). (Doc. No. 20). The dispute stems from an injury sustained by personal injury Plaintiff Ray Ruggley at a Menards store in Celina, Ohio, while he and an unidentified Menards employee were carrying a recliner to load into Ruggley's vehicle. (Doc.

No. 1-1 at 2). Menard seeks defense and indemnification under Ruggley's Allstate automobile policy on the theory that its employee qualifies as an unnamed insured. (Doc. No. 20). Menard requests a declaratory judgment to that effect. (*Id.* at 4). In its answer, Allstate asserted a counterclaim against Menard and Ruggley, seeking a declaratory judgment holding that it is not required to defend or indemnify Menard. (Doc. No. 28).

Allstate moved for judgment on the pleadings in its favor on Menard's third-party complaint and its counterclaim. (Doc. No. 31). Menard filed a brief in opposition, (Doc. No. 32), and Allstate filed a brief in reply. (Doc. No. 35). Ruggley filed a motion to strike Allstate's counterclaim against him or, in the alternative, for leave to respond to the counterclaim. (Doc. No. 33). Allstate opposed that motion. (Doc. No. 34). For the reasons stated below, I grant Allstate's motion and deny Ruggley's motion as moot.

## II. BACKGROUND

On February 28, 2023, Ray Ruggley drove to a Menards store in Celina, Ohio, to purchase and transport a reclining chair. (Doc. No. 1-1 at 2). An unidentified Menards employee helped him lift the chair for the purpose of loading it into Ruggley's vehicle. (*Id.*). At some point, the employee dropped the chair, forcing Ruggley to bear its full weight and resulting in a torn bicep. (*Id.*).

At the time of the accident, Ruggley was insured under an Allstate automobile liability policy. (Doc. No. 20 at 3). As relevant here, the policy agrees to indemnify an "insured person" for damages the insured person is legally obligated to pay because of bodily injury or property damage "arising out of the ownership, maintenance or operation, loading or unloading of an insured auto." (Doc. No. 28-1 at 27). The policy defines an "insured person" to include "you" and "any other person operating the insured vehicle with your permission." (*Id.* at 28). In subsequent filings, Menard contends that loading the vehicle constitutes "operating" that vehicle and, therefore, Menard derivatively qualifies as an insured. (Doc. No. 32 at 8-10). In the alternative, Menard claims

2

it is covered under provisions in the policy as an Uninsured/Underinsured motorist. (Doc. No. 20 at 4).

## III. STANDARD

Motions for judgment on the pleadings filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face." *Id.* at 570.

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered" in deciding a Rule 12(c) motion, as may "matters of public record." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). If a written exhibit is "'inconsistent with the allegations of the complaint, the exhibit [generally] controls.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (quoting *Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955))

## IV. ANALYSIS

### A. PREMATURITY

Menard first argues that Allstate's motion is premature, because Ruggley has not yet filed an answer to Menard's third-party complaint. (Doc. No. 32 at 4-6).

3

To be sure, other courts have approved of Menard's argument. *See, e.g., Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-CV-1140, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009) ("Courts having addressed this issue have held that 'closed' means every defendant must file an answer before a Rule 12(c) motion can be filed.") (citing *Stands Over Bull v. Bureau of Indian Affs.*, 442 F. Supp. 360, 367 (D. Mont. 1977)) (other citations omitted); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed."); *Habeeba's Dance of the Arts, Ltd. v. Knoblauch,*, No. 2:05-CV-926, 2006 WL 968642, at *2 (S.D. Ohio Apr. 10, 2006) ("Thus, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering.") (citing *Stands Over Bull*, 442 F. Supp. at 367) (other citations omitted).

But, in my view, what those courts have not done is explain why the Federal Rules of Civil Procedure would allow one defendant to dictate the litigation strategy for all other defendants – or, more specifically, prohibit a second defendant from obtaining judgment in its favor while a court adjudicates a Rule 12(b)(6) motion to dismiss or awaits an answer not yet filed.

The Rules themselves do not suggest such an approach. Rule 1 states that the Federal Civil Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Nothing in Rule 12(b) suggests a motion filed pursuant to that subsection of the Rule could indefinitely stay a motion for judgment on the pleadings filed pursuant to Rule 12(c) – an outcome that would expressly contradict Rule 1's speediness interpretation.

And Rule 12(a) sets a clear 21-day deadline for a party to file an answer to a complaint or a counterclaim or crossclaim. Fed. R. Civ. P. 12(a)(1). Menard offers no explanation why the

4

expiration of that deadline would not "close the pleadings," nor do the courts in the cases I cited above. Fed. R. Civ. P. 12(c).

Moreover, the cases on which this line of opinions rely do not support the conclusion that no defendant can file a Rule 12(c) motion unless every defendant has filed an answer. The *Stands Over Bull* court asserted that "[j]udgment on the pleadings under Rule 12(c) is available only when the pleadings are closed." *Stands Over Bull*, 442 F. Supp. at 367 (citing *City Bank v. Glenn Const. Corp.*, 68 F.R.D. 511, 512 (D. Hawaii 1975)). But in *City Bank*, Glenn Construction Corp. filed its Rule 12(c) motion after the court had entered a default judgment against it. Glenn Construction Corp. had not filed an answer and sought to dismiss the case for lack of diversity jurisdiction. *City Bank*, 68 F.R.D. at 512. The *City Bank* court's statement of the law thus was based on Glenn Construction Corp.'s failure to file an answer, and not on the actions of any other defendant.

This scenario holds true in another of the allegedly foundational cases in this line of jurisprudence. In *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) – a case cited in *Nationwide Children's* and *Habeeb's* – it was the *pro se* plaintiff who attempted to file a Rule 12(c) motion before the defendant had filed an answer. Instead, the government had filed a Rule 12(b)(6) motion to dismiss, which stayed its deadline to file an answer to the complaint. *See* Fed. R. Civ. P. 12(a)(4)(A). The Ninth Circuit affirmed the denial of the plaintiff's motion for judgment on the pleadings as "procedurally premature." *Doe*, 419 F.3d at 1061.

Further, not only has the Sixth Circuit not adopted this "all or none" Rule 12(c) theory, but it also has repeatedly affirmed district courts that adjudicated Rule 12(b)(6) and Rule 12(c) motions side by side. *See, e.g.*, *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560 (6th Cir. 2015); *Ferron v. Zoomego, Inc.*, 276 F. App'x 473 (6th Cir. 2008); *Cicchini v. Blackwell*, 127 F. App'x 187 (6th Cir. 2005).

I conclude Menard fails to show Allstate's motion is premature. I will consider the motion on its merits after first addressing Allstate's counterclaim against Ruggley.

5

B. **ALLSTATE'S COUNTERCLAIM AGAINST RUGGLEY**

In its motion for judgment on the pleadings, Allstate asserts "Ruggley never answered the third-party counterclaim and has therefore admitted it by default." (Doc. No. 31 at 4). Ruggley then filed a motion to strike or, in the alternative, for leave to file a response to the counterclaim and Allstate's Rule 12(c) motion. (Doc. No. 33). Allstate filed a brief in opposition, again arguing Ruggley is in default and offering its speculative opinions on Ruggley's litigation strategy. (*See* Doc. No. 34 at 2).

But what Allstate has not done is explain why its counterclaim against Ruggley has any merit. The only reference in the third-party counterclaim to Ruggley is his name. (*See* Doc. No. 28 at 6). Allstate does not even offer any legal conclusions why it might be entitled to a declaratory judgment against Ruggley. Nor do any other pleadings suggest a basis for one. Rather, it is the opposite – both Ruggley and Allstate deny that Menard is covered by Ruggley's insurance policy.

Allstate fails to state a claim against Ruggley that is plausible on its face. *Iqbal*, 556 U.S. at 678. Therefore, I dismiss the counterclaim as to Ruggley and deny his motion to strike as moot.

C. **CONTRACTUAL COVERAGE**

According to Menard, Allstate is required to defend and indemnify Menard in this litigation because its employee qualifies as an "insured person" under the terms of Ruggley's Allstate policy. (Doc. No. 20 at 3-4). Allstate contends Menard failed to state a plausible claim for a declaratory judgment in its favor because: (1) neither Menard nor its employee are an insured person; (2) Menard and its employee were not operating Ruggley's vehicle within the meaning of the insurance policy; (3) even if Menard or its employee were an insured person under the policy, the insurance policy contains an exclusion from coverage for claims arising out of a "[b]odily injury to any person related to an insured person"; (4) even if Menard was an insured person, Menard's business operations trigger two other coverage exclusions; and (5) even if Menard's unidentified employee

6

was an insured person, nothing in the policy extends coverage to the employer of a insured person. (Doc. No. 31 at 13) (alteration added and emphasis removed); (*see also id.* at 7-17).

I conclude neither Menard nor its employee qualify as an insured person under the terms of the Allstate policy and that Allstate is entitled to a declaratory judgment to that effect.

Insurance policies are contracts. *Pilkington N. Am., Inc., v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 126 (Ohio 2006). The court interprets insurance contacts "with the same rules as other written contracts." *Hybud Equip. v. Sphere Drake Ins. Co. Ltd.*, 597 N.E.2d 1096, 1102 (Ohio 1992). Insurance contracts should be examined as a whole and courts "presume the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.3d 1256, 1261 (Ohio 2003).

"[W]hen parties to a contract have given a word a specific meaning by expressly defining it in the contract, that definition will generally override whatever definition might otherwise be established by an examination of the word's ordinary meaning or common usage." *Sutton Bank v. Progressive Polymers, L.L.C.*, 163 N.E.3d 546, 553 (Ohio 2020) (citation omitted). The Allstate policy includes several relevant definitions. First, the policy defines "'You' or 'Your' [to] mean the policyholder named on the Policy Declarations and that policyholder's resident spouse." (Doc. No. 20-2 at 6) (emphasis omitted).

The policy also defines "insured person." (*Id.* at 10) (emphasis omitted). For the purposes of determining coverage under the "Bodily Injury Liability Coverage and Property Damage Liability Coverage" policy provisions, the Allstate policy defines an "insured person" as:

1. While operating your insured auto:

    a. you,

    b. any resident relative,

    c. and any other person operating it with your permission.

7

(*Id.*) (emphasis omitted).

The Allstate policy does not define the term "operating." "When construing undefined words in an insurance policy, a court must give the words used in the contract their plain and ordinary meaning." *Collins v. Auto-Owners Ins. Co.*, 80 N.E.3d 542, 548 (Ohio Ct. App. 2017) (citation omitted); *see also Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). Ohio courts often consult dictionaries to ascertain the plain meaning of a word. *State v. Bertram*, 229 N.E.3d 8, 12 (Ohio 2023). *See also Diamond Transp. Logistics, Inc. v. Kroger Co.*, 101 F.4th 458, 463 (6th Cir. 2024).

The term "operate," when applied to motor vehicles, is commonly defined as "to cause to function; to work–specifically, operate an automobile," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/operate (last visited Sept 4, 2025); "to cause or direct function of; to control the working of (a machine, boat, etc.)," *Oxford English Dictionary Online*, https:www.oed.com (last visited Sept. 4, 2025); ) "control the functioning of (a machine, process, or system)," *Operate*, NEW OXFORD ENGLISH DICTIONARY (3rd ed. 2010); "to (cause to) work, be in action or have an effect," https://dictionary.cambridge.org/dictionary/english/operate (last visited Sept 4, 2025). These definitions share a core concept: control over the vehicle's functioning (e.g., starting, stopping, steering, or otherwise directing motion).

Based on its plain and ordinary meaning, I conclude that the definition of "operating" as it applies to "operating an insured vehicle" requires driving or otherwise exercising control over the functioning of the vehicle. *See McConnell v. Dudley*, 144 N.E.3d 369, 395 (Ohio 2019) *(*quoting *Doe v. Marlington Loc. Sch. Dist. Bd. Of Educ.*, 907 N.E.2d 706, 710 (Ohio 2009)) ("One dictionary definition of 'operate' is '[t]o control or direct the functioning of.' . . . That definition suggests that 'operation' when used in reference to a motor vehicle, pertains to controlling or directing the functioning of the motor vehicle itself . . . .") (citation omitted).

Menard's third-party complaint does not include allegations which, taken as true, support Menard's conclusion that its unidentified employee was "operating" Ruggley's vehicle. Therefore, neither Menard nor Menard's unidentified employee are entitled to coverage under Ruggley's Allstate policy. As noted above, the policy extends liability coverage only to "insured persons," defined as (1) "you," (2) a "resident relative of you," or (3) "any other person operating [the insured vehicle] with your permission." (Doc. No. 20-2 at 10). A straightforward reading confirms "you" refers to the named insureds – Ray and Susan Ruggley. (*Id.* at 1). Menard is neither "you" or a "resident relative."

The only route to coverage is if Menards pled sufficient factual allegations demonstrating it is plausible that Menard's employee was "operating" Ruggley's vehicle. But Menard's filings fail to show it is plausible its employee exercised the level of control or direction over Ruggley's vehicle necessary to constitute "operating" the vehicle. Menard alleges only that its employee was "assisting Ruggley with loading a recliner…in[to] his 2022 Ford Truck F150." (Doc. No. 20 at 3). Nothing in the pleadings establishes that the employee at any time had control over the functioning of Ruggley's vehicle itself. (*Id.*); (*see also* Doc. No. 32 at 3).

Menard does not allege its employee drove, started, entered, or directed the truck, or even how close in proximity the employee was to the vehicle when the injury occurred. (*Id.*). This is far removed from the degree of control necessary to qualify as "operating" a vehicle. Consequentially, Menard fails to plead factual allegations sufficient to state a plausible claim that Menard or its employee qualify as an "insured person" under Ruggley's Allstate policy.

Menard disputes this conclusion, arguing that the terms of the Allstate policy must be broadly and liberally construed in its favor. (Doc. No. 32 at 6). Its reasoning appears to be as follows: (1) if a reasonably prudent person can arrive at a different understanding regarding the meaning of a term, the term is considered ambiguous; (2) ambiguities in a policy must always be

9

resolved in favor of the insured; (3) as an insured, this court must favor Menard's definition of "operation" to include "loading"; (4) as a result, this court must hold that Menard is an "insured person" under the policy. (*Id.* at 6-8).

But this argument is fatally flawed. As Allstate correctly notes, the Supreme Court of Ohio has stated that an insurance policy will only be construed in favor of the *policyholder* who is a *party to the contract*. (Doc. No. 35 at 2) (emphasis added) (citing *Westfield*, 797 N.E.2d at 1265). Menard makes an inverted argument, asking me to assume its conclusion at the outset and then to work backward to support that conclusion. This, I cannot do. Menard has failed to establish its employee is covered by Ruggley's policy.

Nor does Menard's reliance on *Blasing v. Zurich American Insurance Company*, 850 N.W.2d 138 (Wis. 2014), alter this result. The auto insurance policy in *Blasing* covered damages incurred "because of bodily and property damage due to the *use* of a car or utility trailer." *Id.* at 145. (emphasis added). Applying Wisconsin precedent which interpreted the term "use" broadly, the Wisconsin Supreme Court construed "use" to encompass "loading," because loading the bed of a truck was consistent with the "ordinary purpose" of the vehicle. *Id.* at 146. That court then concluded that a store employee loading lumber into a customer's truck was a permissive user. *Id.* Particularly relevant here is the *Blasing* court's observation that "[u]se is not limited to the driving [or operating] of the vehicle." *Id.* at 145.

Ruggley's Allstate policy does not include an undefined "use" clause and instead defines an "insured person" to include a non-policyholder who is "operating" the vehicle with the policyholder's permission. The court's decision in *Blasing* has no applicability in this case.

Menard next relies on *Robson v. Lightning Rod Mutual Insurance Co.*, 393 N.E.2d 1053 (Ohio Ct. App. 1978), and *Kish v. Central National Insurance Group of Omaha*, 424 N.E.2d 288 (Ohio 1981), to argue that loading a vehicle is related to occupying the vehicle, and so is within the scope of

10

operation of the vehicle. (Doc. No. 32 at 9). According to Menard, I must broadly construe the definition of "operating" to include "injuries sustained when a person is performing tasks 'related to the operation of the [insured vehicle].'" (*Id.*) (emphasis omitted) (quoting *Kish*, 424 N.E. at 295).

But Menard's reliance on these cases is unavailing. In *Robson*, the court held that a person in the act of loading a trunk was still "occupying" the vehicle, 393 N.E.2d at 1055, and in *Kish*, the court noted that the act of changing a tire could constitute "occupancy" because it was a task related to the intrinsic operation of the vehicle's use. *Kish*, 424 N.E. at 295.

As Allstate correctly notes, these cases specifically address the scope of the term "occupying" in the context of uninsured motorist coverage rather than the definition of "operating" a vehicle under liability insurance policies. (Doc. No. 35 at 4). Neither case explores the definition of "operation." "Occupying" includes activities related to being inside or immediately near the vehicle, which is fundamentally different from controlling or directing the vehicles functioning as required by the definition of "operating." *See Robson*, 393 N.E. at 1054-55 (holding that "occupying" is either "in or upon, entering into or alighting from" or based on whether the claimant was "within a reasonable geographic perimeter" of the vehicle when the accident occurred).

D. **UNINSURED/UNDERINSURED MOTORIST PROVISION**

Lastly, in its complaint, Menard alternatively claims that "to the extent Menard Inc., or its employee is not insured under [Ruggley's Allstate policy], the terms and conditions set forth in the provisions for Uninsured/Underinsured motorists apply." (Doc. No. 20 at 4). But the complaint does not include any allegations which, taken as true, support Menard's assertion that it is entitled to coverage under that provision. Menard's allegation is no more than a legal conclusion unsupported by any factual allegations and which is precisely the type of legal conclusion that is not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555. Therefore, I conclude Allstate is entitled to judgment on the pleadings on this alternate ground as well.

11

V.      CONCLUSION

For the reasons stated above, I grant Allstate's motion for judgment on the pleadings as to Menard and enter a declaratory judgment that Allstate is not required to defend or indemnify Menard in this action. (Doc. No. 31).  Further, I dismiss Allstate's counterclaim against Ruggley, and I deny Ruggley's motion to strike and motion for leave, in the alternative, as moot. (Doc. No. 33).


So Ordered.


    s/ Jeffrey J. Helmick
    United States District Judge